UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| BARBARA HENRY,<br><br>    Plaintiff,<br><br>V.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 14-CV-445-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 9; 10]. The Plaintiff, Barbara Henry, brought this action to obtain review of a partially favorable administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

**I. OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

    1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

This is the second time this case has come before this Court. Barbara Henry ("Claimant") originally filed her disability claim on January 13, 2006, alleging an onset date of April 19, 2004. [TR 15; 970]. The agency denied her application initially and upon reconsideration. [TR 15]. Claimant requested review by an ALJ, and a hearing was held on April 21, 2009. [TR 904–943]. The ALJ subsequently issued an unfavorable decision on May 6, 2009. [TR 12–23]. Plaintiff appealed that unfavorable decision, and this Court remanded the case for further review because the ALJ failed to provide "good reasons" for discounting the opinions of Claimant's treating physicians. *See Henry v. Astrue,* No. CIV.A. 09-373-GWU, 2011 WL 676928 (E.D. Ky. Feb. 16, 2011).

The ALJ held a second hearing on August 8, 2013. [DE 1298-1341]. On August 20, 2013, the ALJ issued a partially favorable decision. [DE 966-978]. The Appeals Council then declined review. [DE 944-947]. Finally, Claimant appealed to this Court. [DE 1.]

At the time the ALJ's August 20, 2013, decision was rendered, Claimant was 55 years old. [TR 1303]. She turned 55 years old on July 4, 2013. [TR 1303.] Claimant's insured status expired approximately six months before her 55th birthday, on December 31, 2012. [TR 972]. Claimant was employed by United Parcel Service (UPS) for approximately nineteen years. [TR 1305]. Claimant alleges disability due to injuries to her lower back, shoulders, and both knees. [DE 9-1 at 3].

In the August 20, 2013, decision, the ALJ first found that "as near as can be determined" Claimant has not engaged in substantial gainful activity since her alleged onset date of April 19, 2004. [TR 972-973.] The ALJ noted that Claimant's earnings records showed that Plaintiff had "earnings" subsequent to the alleged onset date, but could not determine whether the income came from substantial gainful activity or worker's compensation. [TR 972-973.] Therefore, the ALJ declined to base his decision on the first step of the sequential evaluation process. [DE 973.]

Second, the ALJ found that Claimant suffers from the following severe impairments: obesity, degenerative joint disease of the knees, left shoulder osteoarthritis, and chronic back pain with mild canal stenosis of the lumbar spine. [TR 973-974]. Third, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 974-975].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20

C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). After reviewing all of the evidence, the ALJ determined that Claimant has the following RFC:

> [S]ince April 19, 2004, the claimant has the [RFC] to perform a reduced range of light work with the following functional limitations: lift/carry 20 pounds occasionally and ten pounds frequently; occasional climbing of stairs/ramps but never ladders/ropes/scaffolds; only occasional stooping, kneeling or crouching and never crawling; only occasional reaching in all directions including overhead with the non-dominant left upper extremity. She should avoid full body vibration or use of vibratory tools with the left hand; because of body hiatus, she should avoid hazards such as unprotected heights and dangerous machinery.

[TR 975.] After establishing Claimant's RFC, the ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Claimant's vocational factors and RFC could perform past relevant work as a truck driver for UPS. [TR 1338]. The VE testified that this hypothetical individual could not perform any past relevant work. [TR 1338]. Thus, the ALJ determined that the demands of claimant's past relevant work exceed her RFC. [TR 976.]

At this point, the ALJ made note of Claimant's age, stating that on July 3, 2013, the Claimant's age category changed from an individual closely approaching advanced age to an individual of advanced age[1]. [TR 976.]; 20 C.F.R. § 404.1563(d)-(e). The ALJ then moved to the fifth step. During the August 8, 2013, hearing, the ALJ asked the VE if the hypothetical individual could make an adjustment to other work and the VE noted that this hypothetical individual could perform a number of jobs at the light exertion level, including information clerk, inspector and sorter, and parking lot attendant. [TR 1339]. The ALJ found that prior to July 3, 2013, there were other jobs that existed in significant numbers in the national

---

[1] Claimant's birthday is on July 4th. She turned fifty-five years old on July 4, 2013. However, for social security purposes, a person attains a particular age on the day preceding the anniversary of their birth. 20 CFR 404.2(c)(4); 416.120(c)(4).

economy that Claimant could perform. Therefore, the ALJ found that Claimant was not disabled prior to July 3, 2013.

However, the ALJ found that Claimant became disabled on July 3, 2013, the date the claimant's age category changed. The ALJ noted that "a finding of disabled is reached by direct application of Medical-Vocational Rule 202.06." [TR 977.] Thus, Claimant is entitled to benefits under Title XVI of the Social Security Act, but not under Title II because she was not found to be disabled before her insured status expired.

The ALJ's decision that Claimant was not disabled prior to July 3, 2013, became the final decision of the Commissioner when the Appeals Commission subsequently denied Claimant's request for review. [TR 944]. Claimant has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the

Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

Claimant is challenging the ALJ's finding that she was not disabled prior to July 3, 2013. She presents three main issues for review. [DE 9-1 at 1.] Two of the issues relate to the ALJ's treatment of certain medical opinions. First, Claimant argues that the ALJ did not provide "good reasons" for not giving the opinions of her treating physicians controlling weight. Second, she argues that the ALJ improperly discounted the findings of Dr. Koerber's consultative examination. Claimant's third argument is that this is a "borderline age case," but the ALJ failed to properly treat it as such in his decision.

<u>1. The ALJ provided good reasons for not giving controlling weight to the treating physicians' opinions.</u>

Claimant argues that the ALJ failed to state "good reasons" for not giving the opinions of her treating physicians, Dr. Dome and Dr. Tallio, controlling weight. [DE 9-1 at 7.] This argument is not persuasive because the ALJ properly explained that Dr. Tallio's opinion and the part of Dr. Dome's opinion that was discounted were contrary to the weight of the medical evidence in the record.

The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(d). Not all medical opinions, however, are treated equally. The opinions of treating physicians, "medical professionals most able to provide a detailed, longitudinal picture," are *generally* afforded the greatest deference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it

6

is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). The ALJ can reject the opinion of a treating physician "if good reasons are identified for not accepting it." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (holding that an ALJ may reject the opinion of a treating physician if the treating physician's opinion is divorced from supporting objective evidence). The Sixth Circuit has instructed that "[w]here the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, [it] generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 175-76 (6th Cir. 2009).

In its prior opinion, this Court held that the rationale the ALJ gave in his first decision for discounting the opinions of the Claimant's treating physicians amounted to an improper "summary rejection." *Henry v. Astrue,* No. CIV.A. 09-373-GWU, 2011 WL 676928, at *6 (E.D. Ky. Feb. 16, 2011). The Court explained that in his first decision, "the ALJ is simply making a conclusory statement that the limitation of the plaintiff to less than sedentary work is not supported by objective findings and that, based on no more than that supposition, the opinion might have been given as an attempt to accommodate the plaintiff." *Id.* The case was therefore remanded for further consideration of the treating physicians' opinions.

The ALJ's second decision provides a far more detailed, complete analysis of the reasons for discounting the treating physicians' opinions based on other medical evidence in the record, mainly the opinions of University of Kentucky doctors whose opinions conflicted with those of the treating physicians. To begin, the ALJ plainly acknowledged that his first

7

decision was remanded for further consideration because it provided insufficient grounds for discounting the opinions of Claimant's treating physicians. In the first paragraph of his second decision, the ALJ stated that "United States Senior District Judge G. Wix Unthank remanded the case to explain the weight given to the treating source opinion(s)." [TR 970.] Then the ALJ stated that he was specifically "addressing Judge Unthank's concerns regarding the weight to treating/examining opinions cited in the remand." [TR 973.] Thus, in reaching his second decision, the ALJ devoted great attention to the treating physicians' opinions.

As to Dr. Dome, the ALJ did not discount his findings entirely. Rather, the ALJ found that "Dr. Dome's limitations are supportive of the RFC in this decision." [TR 973.] The ALJ only discounted the portion of Dr. Dome's opinion that stated Claimant had "limited use of [her] left leg." [TR 765.] The ALJ provided good reasons for discounting that portion of Dr. Dome's opinion by citing reports from Dr. Cassidy, a UK orthopedic specialist. "Dr. Cassidy's review of an April 2012 lumbar MRI showed no obvious reason why Ms. Henry was having such pain in her left leg. His August 2012 examination was unremarkable including negative straight leg raising and full extension of both knees." [TR 973.] Thus, the ALJ provided adequate support – in the form of other medical evidence – for discounting a small piece of Dr. Dome's opinion.

Claimant's second treating physician, Dr. Tallio, concluded that Claimant is "unable to maintain gainful employment." [TR 902.] Dr. Tallio based this conclusion on a September 2008 Functional Capacity Evaluation (FCE) that found Claimant "was unable to perform sedentary work." [TR 902.]

As an initial matter, the ALJ stated in his first decision, and the Commissioner now reasserts, that Dr. Tallio's opinion that Claimant was unable to maintain gainful

8

employment was an assertion concerning an issue reserved to the Commissioner. [TR 21; DE 10 at 8.] Opinions on issues reserved to the Commissioner, such as statements by medical sources that a claimant is "unable to work," are not entitled to "any special significance". 20 C.F.R. § 404.1527(d)(1)-(3). Dr. Tallio's statement that Claimant cannot maintain gainful employment falls within that definition. It is a statement on an issue reserved to the Commissioner and is therefore not entitled to controlling weight.

The ALJ further examined Dr. Tallio's opinion in his second decision and determined that the "extremely limiting" FCE relied on by Dr. Tallio was "contrary to the weight of the evidence in general." [TR 973.] To establish the weight of the evidence, the ALJ cited diagnostic, clinical, and examination findings by Dr. Selby, Dr. Hosey, Dr. Grau, and the aforementioned Dr. Cassidy, all University of Kentucky physicians, as well as reports from Dr. Sheridan and Dr. Jackson, and even Dr. Dome's report. [TR 973-974.] The ALJ observed that these reports were "unremarkable" or "unimpressive" for the most part and certainly did not contain any evidence that came close to the level of impairment that the FCE found. For example, Dr. Jackson examined Claimant and found that her lower back pain warranted only a 5% impairment rating for purposes of the state workers' compensation system. [TR 781.] Dr. Selby, an orthopedist who examined Claimant's knees, stated that Claimant would probably not undergo a knee replacement anytime in the near future, and that it would be beneficial for claimant to lose weight, enter a therapy program, and have her back fully worked up. [TR 1060-61.] Dr. Cassidy noted that a 2013 "EMG nerve conduction velocity [was] unremarkable" and stated, "I do not see anything that could be easily alleviated by any sort of surgical intervention." [DE 1272.]  Thus, the ALJ cited sufficient evidence to show that the FCE and Dr. Tallio's report went against the overall weight of the evidence.

Claimant makes several arguments challenging the evidence cited by the ALJ. First, she asserts that the ALJ's decision ignored a January 2013 MRI that showed encroachment of the nerve roots in her spine. [DE 9-1 at 7.] She argues that this is significant because this condition can, in certain cases, automatically entitle a claimant to disability benefits. [DE 9-1 at 7.] Here, Claimant is referring to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 that an ALJ considers at step three of the sequential analysis. While it may be true that in some cases that condition can lead to an automatic finding of disability, in this case none of Claimant's impairments meet or equal any listing. [TR 974-975.] The ALJ's failure to mention this discrete piece of evidence does not invalidate his judgment about the overall weight of the evidence.

Second, Claimant argues that the ALJ failed to include Dr. Cassidy's statement that surgery might help Claimant's back. [DE 9-1 at 8.] Here, Claimant references Dr. Cassidy's February 8, 2013, report. [TR 1277.] Claimant ignores that approximately two months later, in an April 3, 2013, report, Dr. Cassidy stated that he "would struggle to recommend any sort of a surgical intervention to her as I really do not think it would help her a whole lot as far as her spine is concerned." [TR 1273.] Thus, it was not erroneous for the ALJ to rely on Dr. Cassidy's more recent opinion that back surgery would not help Claimant.

Third, Claimant argues that the ALJ's finding that she can perform light work is inconsistent with medical opinions that she required a knee replacement. [DE 9-1 at 8.] The ALJ explicitly acknowledged that several doctors believed Claimant would need a knee replacement. [TR 974.] However, none of the doctors who commented on a knee replacement indicated that Claimant required the procedure immediately. Dr. Selby stated in his report, "I told her we likely would *not* be replacing her knees at any time in the near future." [TR 1061.] (emphasis added). Dr. Johnson stated, "[Claimant] is also counseled on

the fact that she is *eventually* going to need a total knee arthroplasty." [TR 1158.] (emphasis added). Lastly, Dr. Hosey stated, "We injected each knee with cortisone today. We will have her try to do some aquatic therapy exercises, ice after activity. We can repeat her injections in *three to four months if needed*." [TR 1158](emphasis added). Medical opinions that Claimant would need a knee replacement at some point in the future did not automatically preclude Claimant from performing light work at the time of the ALJ's opinion, so this argument also fails.

The ALJ discounted Dr. Tallio's opinion and the 2008 FCE on the basis that it was inconsistent with the other medical evidence in the record. That is a valid reason for discounting the opinion of a treating physician, so the Court will uphold the ALJ's decision.

2. The ALJ did not err in discounting Dr. Koerber's opinion.

Claimant also argues that the ALJ improperly discounted Dr. Koerber's findings. [DE 9-1 at 12.] The Social Security Administration sent Claimant for a consultative examination with Dr. Koerber on November 6, 2010. [TR 1047.] Dr. Koerber concluded that Claimant "has the ability to perform activities involving sitting, lifting objects lighter than 10 pounds, handling objects, moving about for short periods of time, standing for short periods of time, hearing, and speaking," but "would have difficulty performing activities involving lifting or carrying objects heavier than 10 pounds or standing or moving about for long periods of time." [TR 1051.]

The ALJ determined that "Dr. Koerber's opinion is not entitled to significant weight given its inconsistencies and the lack of supporting x-rays or other diagnostic evidence" and because "his conclusion did not fully assess the claimant's condition and appears to have relied on [Claimant's] subjective report of symptoms in lieu of objective findings." [TR 974.] In addition, the ALJ observed that recent knee x-rays from UK in October and November

2012 were "fairly benign with mild to some moderate findings," which also undermined Dr. Koerber's opinion. [TR 974.]

Examining physicians, such as Dr. Koerber, do not receive the same deference as treating physicians, but an ALJ should nonetheless give good reasons for the weight assigned to their reports. *See generally* 20 C.F.R. § 404.1527.

Claimant first argues that the ALJ improperly discounted Dr. Koerber's opinion due to a lack of supporting diagnostic evidence because his "report specifically states that the Social Security Administration requested that no diagnostic examinations be performed." [DE 9-1 at 12.] Claimant asserts that it is counterintuitive for the Social Security Administration to order a consultative examination with no diagnostic examinations, and then discount the doctor's report because it is not supported by diagnostic evidence. [DE 9-1 at 12.] Indeed, Dr. Koerber's report states "DIAGNOSTIC EXAMS: None requested." [TR 1050.] Claimant's argument is well taken. Yet, even accepting Claimant's argument and eliminating lack of supporting diagnostic evidence as a rationale for discounting Dr. Koerber's report, the ALJ still articulated three additional reasons for giving his opinion little weight. The ALJ also acknowledged the fact that the agency did not request any diagnostic testing when it ordered Dr. Koerber's examination, [TR 974] ("… admittedly with no diagnostic exams requested or performed."), which further indicates that the ALJ was not relying solely on the lack of diagnostic evidence to discount the opinion.

First, the ALJ noted that inconsistencies existed in Dr. Koerber's opinion. It concluded that Claimant could do less than sedentary work, but also found that Claimant had "normal posture and gait" [TR 1049] as well as "5/5" strength in all extremities, only moderate difficulty performing a knee squat, and only mild difficulty getting on and off of the examination table. [TR 1051.] It was otherwise, as the ALJ put it, "a not very

12

impressive examination." [TR 974.] The Court also observes that the opinion states that Claimant has right greater than left lower and upper extremity paresthesis, but later states that Claimant "did not have any sensory abnormalities on today's exam." [TR 1051.] An ALJ must consider the consistency of an opinion. 20 C.F.R. §§404.1527(c)(4); 416.927(c)(4). The internal inconsistency in Dr. Koerber's report was a valid ground for discounting his opinion.

Second, the ALJ also noted Dr. Koerber's reliance on Claimant's subjective statements about her inability to work. [TR 974.] In the summary section of his report, Dr. Koerber incorporated Claimant's own statements about her limitations. [TR 1050] ("Ms. Henry … states that she is no longer able to perform daily job duties secondary to problems with low back pain, knee pain, left shoulder pain, and neck pain."). Dr. Koerber's report also includes objective medical evidence, but it was acceptable for the ALJ to point out the specific inclusion of Claimant's statements regarding her inability to work. The ALJ made a reasonable observation given the seeming disparity between the unremarkable objective evidence listed in the report and Dr. Koerber's ultimate conclusion that Claimant was limited to less than sedentary work. While this alone would not have been enough for the ALJ to discount Dr. Koerber's opinion, the ALJ did not err by considering it as one of multiple factors in support of his decision.

Third, the ALJ also relied on knee x-rays from UK in October and November 2012 to discount Dr. Koerber's opinion. In contrast to Dr. Koerber's opinion, the knee x-rays were "fairly benign" with only "mild to some moderate findings." [TR 974.] Claimant argues that the ALJ was wrong to rely on these x-rays because the ALJ "ignore[d] the fact that three treating sources, Dr. Selby, Dr. Hosey, and Dr. Johnson, all state in the records that Ms. Henry will require bilateral total knee replacement in the near future." [DE 9-1 at 15.] This

argument is not convincing. First, the ALJ clearly did not "ignore" these opinions, as he discussed each of them in the paragraph immediately prior to his discussion of Dr. Koerber's opinion. Furthermore, Dr. Selby, in his November 11, 2012, report stated the following:

> OVERALL ASSESSMENT: Is the patient does have mild to moderate arthritis, but I am not sure this is causing the majority of her pain. *I think that replacing her knees at this time would not help much of her pain.* I do think that it may be helpful at one point, but she needs to lose weight, get into a therapy program, and have her back fully worked up.

[TR 1060.] (emphasis added). Dr. Selby then stated, "I told her we likely would *not* be replacing her knees at any time in the near future." [TR 1061.] (emphasis added). Similarly, Dr. Johnson stated "[t]he patient is also counseled on the fact that she is *eventually* going to need a total knee arthroplasty." [TR 1158.] Dr. Hosey agreed with Dr. Johnson's assessment, and commented that "[w]e can repeat her injections *in three to four months if needed.*" [TR 1158.] Thus, Dr. Selby actually stated the exact opposite of what Claimant asserts, and the statements of Dr. Johnson and Dr. Hosey hardly amount to a recommendation that Claimant will require a total knee replacement in the near future. Contrary to Claimant's argument, these opinions do not undermine the ALJ's reliance on the knee x-rays to discount Dr. Koerber's opinion. In the Court's view, Dr. Selby's opinion actually reinforces the ALJ's decision to discount Dr. Koerber's opinion.

Even eliminating the lack of supporting diagnostic evidence as a reason for discounting Dr. Koerber's opinion, the ALJ articulated three other valid reasons for affording his opinion little weight. Therefore, the ALJ's decision to discount Dr. Koerber's opinion was supported by substantial evidence.

14

3. The ALJ's decision was supported by substantial evidence despite the absence of a borderline age analysis.

Finally, Claimant argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not explicitly analyze her borderline age. [DE 9-1 at 11.] Claimant lost her insured status on December 31, 2012. [TR 972.] The ALJ found that Claimant became disabled approximately six months later, on July 3, 2013, because her age category changed from "an individual closely approaching advanced age" to "an individual of advanced age."[TR 977.]; *see also* 20 C.F.R. § 404.1563(d)-(e). Claimant asserts that this is a borderline age situation because she lost her insured status about six months before the date on which her age category officially changed. [DE 9-1 at 9-11.] She argues that under *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395 (6th Cir. 2008), the ALJ's decision was not supported by substantial evidence because he failed to explicitly analyze her borderline age despite her "additional vocational adversities." [DE 9-1 at 11.] This argument fails because the additional vocational adversities that Claimant asserts fall far below the standard set by *Bowie*.

As provided in 20 C.F.R. § 404.1563(b), the Social Security Administration "will not apply the age categories mechanically in a borderline situation." The Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) states that a borderline situation exists when: (1) the claimant's age is within a few days or months of a higher age category, and (2) use of the higher age category would result in a finding of disability. Application of the Medical-Vocational Guidelines in Borderline Age Situations, HALLEX II-5-3-2, 2003 WL 25498826.

If a borderline situation exists, an ALJ must determine whether to use the claimant's chronological age or the higher age category using a "sliding scale approach." *Id*.

Under that approach, "the claimant must show progressively more additional vocational adversity(ies) – to support the use of the higher age – as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id*. Examples of "additional vocational adversities" provided in the HALLEX include being barely literate in English, having only a marginal ability to communicate in English, and having work experience only in unskilled jobs in isolated industries such as fishing or forestry. *Id*. The HALLEX instructs that "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age – even when the time period is only a few days." *Id*. It specifically states that "[t]he adjudicator need not explain his or her use of the claimant's chronological age. *Id*.

In *Bowie*, the Sixth Circuit interpreted the above regulation and the corresponding HALLEX section, stating that "§ 1563(b) does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case." 539 F.3d at 399. The Court explained:

> Although ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, *nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination.* Rather, the regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations.

*Id.* at 399 (emphasis added).

However, the Court further stated that despite not having an obligation to address a claimant's borderline age situation, "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Id.* at 401. The Court

provided an example of a situation in which a claimant's "significant" additional vocational adversities "would merit some discussion of proper age categorization in order to meet the substantial evidence threshold." *Id.* The Court suggested that "substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id.*

The *Bowie* example is the benchmark by which courts should analyze whether significant enough additional vocational adversities exist to warrant discussion of a claimant's borderline age by an ALJ. In *Bowie* itself, the Court compared the claimant's situation to the hypothetical and found no evidence that the claimant had any additional vocational adversities that would justify a higher age category. *Id.* at 401. The Sixth Circuit repeated this approach in *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516 (6th Cir. 2011), when it compared a claimant's additional vocational adversities to the *Bowie* hypothetical:

> Caudill's work is semiskilled, not unskilled as in the hypothetical, and he is capable of performing light work, rather than sedentary work as in the hypothetical. Bowie could only perform unskilled, sedentary work, just as in the hypothetical, and yet the court still found "no evidence in the record that [she] suffered from any 'additional vocational adversities' that might justify placing her in the higher age category," or that would even require the ALJ to explain the reasons for his age-categorization decision …
>
> In sum, Caudill's case compares much less obviously to *Bowie's* hypothetical scenario than would at first appear. In fact, Bowie herself may even be more akin to the hypothetical than Caudill: Bowie had two limitations described in the hypothetical (unskilled work history and ability to do sedentary work) and she was given the benefit of the doubt regarding the credibility of her alleged limitations. Caudill, on the other hand, has at most one limitation (work history in an isolated

17

>industry) and some inconclusive and contradictory evidence of another limitation (supposedly being "barely literate").

*Id.* at 517-18 (6th Cir. 2011). This comparison led the *Caudill* Court to find that the ALJ's decision was supported by substantial evidence despite the fact that the ALJ did not discuss the claimant's borderline age status. *Id.*

In the present case, the ALJ did not explicitly analyze whether to move Claimant into the advanced age category prior to June 3, 2013. Claimant argues this lack of discussion means the ALJ's decision is not supported by substantial evidence because she has additional vocational adversities. [DE 9-1 at 11.] Claimant asserts that her additional vocational adversities are the limitations that the ALJ stated on her RFC, *see* [TR 975], plus "the fact that she had the same job with UPS for twenty plus years therefore severely limiting the experience she has in the work force as far as being exposed to learning new skills during her career." [DE 9-1 at 11.]

The six month difference between the time Claimant lost her insured status and the date on which she moved into the advanced age category places her within the range of a borderline age situation. She was "a few months" away from a higher age category, *Ash v. Colvin*, No. 2:13-CV-47, 2014 WL 1806771, at *6 (N.D.W. Va. May 7, 2014) ("A review of case law indicates that, generally, claimants who are within six months from the next age category are routinely considered borderline."), and placing her in the higher age category clearly would have resulted in a finding of disability because that actually occurred once she reached the higher age category. HALLEX II-5-3-2, 2003 WL 25498826. Even so, the ALJ was not obliged to discuss Claimant's borderline status merely because she fell into the applicable range. *Bowie*, 539 F.3d at 399.

Claimant's alleged additional vocational adversities are not significant enough to render the ALJ's ultimate decision unsupported by substantial evidence. The adversities that Claimant asserts are far less severe than those stated in the *Bowie* hypothetical. Here, Claimant has the RFC to perform light work with added restrictions rather than only sedentary work as in the *Bowie* hypothetical. Her prior work was semi-skilled as opposed to unskilled in the hypothetical. Claimant is undoubtedly literate, as she testified that she sometimes reads for entertainment. [TR 1325.] The lone similarity between her case and the hypothetical is that she worked in a single industry for her entire career, but even this similarity is attenuated at best. Working as a UPS driver is a far less isolated profession than working in the fishing industry.

Moreover, Claimant's adversities are also less severe than those asserted by the actual claimants in *Bowie* and *Caudill*. The claimant in *Caudill* had prior work experience only as a roof bolter in a coal mine and there was at least some evidence that he was "barely literate." 424 Fed. App'x at 518. The claimant in Bowie could perform only unskilled, sedentary work, just as in the hypothetical. 539 F.3d at 396. Yet, in both cases the Sixth Circuit held that these additional adversities were not "significant" enough to require a borderline age analysis by the ALJ. *Id.* at 401; 424 F. App'x at 517-18. In *Bowie* the Court even stated that "*it is not difficult* to conclude that the ALJ's benefits decision is supported by substantial evidence despite its lack of an explicit discussion regarding age categorization." 539 F.3d at 402 (emphasis added). Thus, Claimant's adversities do not rise to a level that necessitated borderline age analysis by the ALJ.

Lastly, when Claimant's insured status expired, she was approximately six months away from the next age category, whereas the *Bowie* hypothetical was only one month away, and the claimants in both *Bowie* and *Caudill* were about two months away from the

next age category at the relevant time in their respective cases. 539 F.3d at 397; 424 F. App'x at 516. The HALLEX states that "the claimant must show progressively more additional vocational adversity(ies) – to support the use of the higher age – as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." HALLEX II-5-3-2, 2003 WL 25498826. Thus, the fact that Claimant was further away from the next age category, but faced fewer vocational adversities, further weakens her claim.

Claimant has not presented additional vocational adversities justifying the early use of a higher age category. Therefore, the ALJ's decision is supported by substantial evidence despite its lack of an explicit analysis of whether to move Claimant into the "individual of advanced age" category prior to June 3, 2013.

### V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Claimant's motion for summary judgment [DE 9] is **DENIED**;

2. The Commissioner's motion for summary judgment [DE 10] is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 23, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY